**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Jacob Dagit,<br><br>    Plaintiff,<br><br>  v.<br><br>Chicago Police Officers R.A. Ayala (#19896),<br>Nebojsa Djurdjevic (#9338), Superintendent<br>David Brown, and City of Chicago,<br><br>    Defendants. | Case No. 1:23-cv-02238<br><br>Judge Mary M. Rowland<br><br>Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS' COMBINED MOTION TO BIFURCATE AND STAY DISCOVERY**
**AND TRIAL ON PLAINTIFF'S 42 U.S.C. § 1983 *MONELL* CLAIM**

Defendants, Officers Ayala and Djurdjevic (collectively "Defendant Officers"), former Superintendent Brown, and the City of Chicago ("City"), jointly move this Court to bifurcate and stay discovery and trial of Plaintiff's 42 U.S.C. § 1983 *Monell* claim pursuant to Federal Rules of Civil Procedure 42(b) and 26(d).

## FACTUAL BACKGROUND

Plaintiff alleges constitutional violations arising from their[1] participation in a protest in Chicago on June 1, 2020. In their First Amended Complaint ("Complaint"), Plaintiff alleges that while at the protest "one or more unidentified Chicago police officers" shoved Plaintiff causing Plaintiff to fall to the ground. (ECF No. 26 ¶¶ 43-48.) Plaintiff alleges that while on the ground, "one or more unidentified Chicago police officers trampled" Plaintiff. (*Id.* ¶ 49.) Plaintiff further alleges that Defendant Officers falsely arrested him. (*Id.* ¶ 50.) Plaintiff does not allege that Defendant Officers shoved him or trampled him, and does not name the unidentified officers, or any other "John Does" as defendant parties. (*See id.* ¶¶ 43-56.) Plaintiff asserts a claim against the

---

[1] Plaintiff uses they/them pronouns. (ECF No. 26 ¶ 12.)

City under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (the "*Monell* claim").[2] Plaintiff does not seek any injunctive relief, only compensatory damages. (*See* ECF No. 26 at 56.)

Plaintiff's allegations in support of their *Monell* claim are vague, wide-ranging, and purport to involve thirteen *de facto* policies, practices, or customs that, according to Plaintiff, have been implemented by the Chicago Police Department ("CPD"). Plaintiff also alleges that the City has acted with deliberate indifference to Plaintiff's First, Fourth, and Fourteenth Amendment rights.

This case is one of several cases that were severed from *Wilger v. City of Chicago*, No. 20-cv-6851. *See* No. 20-cv-6851, ECF Nos. 142 & 143. In early December, plaintiffs in other severed cases issued expansive discovery requests to the City and Superintendent Brown. The plaintiffs' requests in those actions are largely unrelated to the Section 1983 claims against the defendant officers. Given Plaintiff's broad, wide-ranging and disparate *Monell* allegations, Plaintiff is likely to propound similarly expansive *Monell*-related discovery. The Court should stay and bifurcate such burdensome discovery.

*First*, the *Monell* claim will fail as a matter of law if Plaintiff cannot first demonstrate that Defendant Officers violated their constitutional rights, rendering any *Monell*-related discovery moot. The City should not have to expend time and resources to respond to discovery and prepare for a trial that may ultimately be unnecessary.

*Second*, if Plaintiff succeeds in their claims against any of the Defendant Officers, the City will consent to the entry of judgment ("Consent") against itself for compensatory damages and, to the extent allowed by the Court, reasonable attorneys' fees, even if any Defendant Officer is found to be not liable because of qualified immunity. (*See* Proposed Order of Consent Judgment, attached

---

[2] Although Plaintiff does not allege a *Monell* claim against Superintendent Brown, their Complaint contains several *Monell*-related allegations against him. (*See id.* ¶¶ 141-45.)

2

as <u>Exhibit A</u>.) Thus, discovery and a trial on Plaintiff's *Monell* claim will be unnecessary because Plaintiff will be made whole through compensatory damages, the only relief they seek.

*Third*, the Court should stay discovery and bifurcate the *Monell* claim because simultaneously trying the individual claims against the Defendant Officers and the *Monell* claim against the City will inevitably prejudice the Defendant Officers by introducing evidence that is not relevant for determining each Defendant's respective liability.

## LEGAL STANDARD

Rule 42(b) permits district courts to bifurcate claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Only one of these criteria need be met to justify bifurcation. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). If bifurcation is warranted, Rule 26(d) permits the court to stay discovery and trial on *Monell* claims pending the resolution of non-*Monell* allegations. *See, e.g.*, *Horton v. City of Chicago*, No. 13-CV-6865, 2016 WL 316878, at *2, 7 (N.D. Ill. Jan. 26, 2016) (granting motion to bifurcate and stay discovery and trial of *Monell* claims and entering limited consent to entry of judgment against the City); *Tate v. City of Chicago*, No. 19 C 7506, 2021 WL 4400982, at *3 (N.D. Ill. Sept. 27, 2021) (same). District courts enjoy broad discretion in determining whether to order bifurcation, and such decisions will be overturned only "upon a clear showing of abuse." *Krocka*, 203 F.3d at 516.

## ARGUMENT

Defendants seek bifurcation and staying of discovery and a trial on Plaintiff's *Monell* claim as this best serves the interests set forth in Rule 42(b), namely, avoiding prejudice and promoting convenience, expedience, and judicial economy. *Lindsey v. Orlando*, 232 F. Supp. 3d 1027, 1038 (N.D. Ill. 2017) (granting bifurcation and staying discovery and trial of *Monell* claims). The Seventh Circuit endorses bifurcation to avoid "the waste of the valuable time and resources of the

court." *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). Courts in this District routinely grant motions to bifurcate *Monell* claims because they "typically require a significant amount of work—including expert discovery—that may ultimately be for naught because in many if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Bradford v. City of Chicago*, No. 16-CV-1663, 2019 WL 5208852, at *2 (N.D. Ill. Oct. 16, 2019); *see also Haligas v. City of Chicago*, No. 22-CV-313, 2023 WL 3226197, at *2-3 (N.D. Ill. May 3, 2023) (granting City's motion to bifurcate and stay discovery on plaintiff's *Monell* claim); *Blassingame v. City of Chicago*, No. 19-CV-7287, 2023 WL 2390363, at *3-5 (N.D. Ill. Mar. 7, 2023) (same); *Savory v. Cannon*, No. 17-CV-204, 2022 WL 767169, at *6 (N.D. Ill. Mar. 14, 2022) (same). Indeed, "the willingness of many judges to grant [bifurcation motions] stems in large part from the recognition that, in many instances, claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018).

Here, resolving Plaintiff's claims against the Defendant Officers before proceeding with costly *Monell* discovery will lead to a more efficient, streamlined litigation and promote judicial economy. *See* Order at 2-3, *Mann v. City of Chicago*, No. 22-CV-04282 (N.D. Ill. Jan. 2, 2024), ECF No. 59 (Jantz, J.) (granting bifurcation and stay of discovery on similar *Monell* claim against City arising from 2020 protests since it "promotes judicial economy" to proceed with discovery on individual claims "stemming from an alleged incident on a discrete day" before turning to costly discovery on a "complicated and far-reaching" *Monell* claim) (attached as Exhibit B).

And because Plaintiff ultimately may not prove an underlying constitutional violation against Defendant Officers, the parties may never need to litigate the *Monell* claim, thus conserving

the time and resources of the parties and the Court. *See Treadwell v. Salgado*, No. 19-CV-3179, 2022 WL 267988, at \*5-7 (N.D. Ill. Jan. 28, 2022) (granting bifurcation and stay "in the interest of litigation and judicial economy"). This is especially true, given that the City will enter into the Consent, providing Plaintiff the relief they seek (assuming they successfully prosecute their claims against Defendant Officers) without the need to prove their *Monell* claim.

The bifurcation and stay of the *Monell* claim would not unfairly prejudice any party. Rather, if the Court were to deny a stay and bifurcation of the *Monell* claim, it would unfairly prejudice Defendant Officers, because doing so would introduce evidence of alleged police misconduct at other protests and CPD policies and procedures unrelated to Defendant Officers' liability to Plaintiff. Denial of Defendants' motion would also result in unfair prejudice to the City because of the substantial risk that a jury would hold the City liable without giving the *Monell* claim due deliberation, particularly if the jurors find the actions of any Defendant Officer especially egregious.

## I. Bifurcation best serves the interests of streamlined litigation and judicial economy.

### A. Plaintiff must first prove Defendant Officers are liable before demonstrating the City is liable on the *Monell* claim.

Stay of discovery and bifurcation of the *Monell* claim is warranted because if the Defendant Officers are not liable for Plaintiff's alleged injuries, then the City and Superintendent Brown will not be either. A plaintiff generally cannot establish that a municipality is liable for a constitutional violation under *Monell* without first proving that the plaintiff's constitutional rights were, in fact, violated. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."); *Carthans v. City of Harvey*, No. 14-CV-5094, 2017 WL 11595111, at \*1

(N.D. Ill. July 13, 2017) ("It is well-established that a plaintiff generally cannot prevail on a *Monell* claim without first establishing an underlying constitutional injury."). Although the Seventh Circuit has recognized that a municipality can be found liable under *Monell* even when its officers are not, this limited circumstance occurs only if such a finding would not create an "inconsistent verdict." *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 292, 305 (7th Cir. 2010). In making this determination, courts "look to the nature of the constitutional violation, the theory of municipal liability and the defenses set forth." *Id.*

The City's *Monell* liability in this case is entirely dependent on whether Defendant Officers violated Plaintiff's constitutional rights. Plaintiff's underlying constitutional claims against Defendant Officers center around allegations that Defendant Officers falsely arrested Plaintiff. (ECF No. 26, ¶¶ 50-52.) Plaintiff also alleges that "one or more unidentified" officers shoved Plaintiff knocking them to the ground and, while on the ground, was "trampled" by unidentified officers. (*Id.* ¶¶ 47-49.) Plaintiff does not allege that the Defendant Officers pushed him or trampled him. (*See id.*) Plaintiff alleges that Defendant Officers acted "under the authority of one or more interrelated de facto policies, practices, and/or customs of the Chicago Police Department." (*Id.* ¶ 135.)

Nevertheless, Plaintiff seeks to hold the City liable based on claims that Defendant Officers caused their injuries by purportedly acting pursuant to the City's policies, practices, or customs. (*Id.* ¶ 136.) Most of these "policies, practices, or customs," however, have no relation to the Plaintiff's alleged injuries. For example, Plaintiff alleges that the City has policies, practices, or customs of "using lethal force," "escalating encounters through . . . acts that illustrate . . . animus," "breaking, stealing, or otherwise disposing of protestors' belongings," "using chemical agents like pepper spray and/or tear gas without prior warning," "failing to train officers," and "maintaining,

condoning, and failing to take any steps to end the code of silence in the CPD." (*Id.*) Only some of the alleged policies, practices, or customs have any reasonable relation to Plaintiff's alleged injuries: "retaliating against protesters who record the police and/or speak out against police violence," "falsely arresting protesters," "giving protestors no reasonable opportunity to leave and/or trapping protestors in enclosed areas," and "failing to intervene to prevent police violence and other forms of misconduct[.]" (*Id.*) But Plaintiff does not allege how these policies, practices, or customs caused their injuries.

Based on the nature of Plaintiff's alleged constitutional violations, the City's liability depends on the Defendant Officers' liability for the alleged underlying misconduct. This is so because Plaintiff has not, and cannot, allege any harm premised on *Monell* liability that is distinct from the claims alleged against Defendant Officers. *See, e.g.*, *Lyons v. City of Chicago*, No. 20-CV-03412, 2023 WL 2390364, at *4 (N.D. Ill. Mar. 7, 2023) (noting that the "narrow exception" created in *Thomas* applies only "when the *Monell* claim is 'factually distinct' from the claims against the individual officers"). Indeed, Plaintiff alleges that their injuries were caused by unidentified officers shoving and trampling them and by the Defendant Officers falsely arresting them. (ECF No. 26 ¶¶ 43-56.) Thus, Plaintiff's alleged harm caused by each alleged policy, practice, or custom can "only manifest itself through the Defendant Officers' actions." *Ezell v. City of Chicago*, No. 18-CV-1049, 2019 WL 3776616, at *4 (N.D. Ill. Aug. 12, 2019); *see also Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) ("Plaintiffs' claims against Municipal Defendants are wholly contingent on the excessive force claim against Defendant Officers"); *Harris v. City of Chicago*, No. 14-CV-4391, 2016 WL 3261522, at *3 (N.D. Ill. June 14, 2016) ("The alleged harm to Plaintiff was not caused by any *de facto* policies independent of any officer's actions; thus, a constitutional violation by an individual officer must be found before

the City may be held liable under the *Monell* claims."); *Claxton v. City of Chicago*, No. 14-CV-10076, 2015 WL 5304630, at *1 (N.D. Ill. Sept. 9, 2015) ("The alleged harm to Plaintiffs was not caused independently by these alleged City policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiffs' *Monell* claims.").

Likewise, whether the City allegedly had an inadequate disciplinary or training system is irrelevant unless Defendant Officers committed some underlying constitutional misconduct in this case. *See Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) (holding a municipality cannot be liable under *Monell* for a failure to train when there is no underlying constitutional violation by an employee); *Ezell*, 2019 WL 3776616, at *4 (alleged harm caused by City's policies and failure to properly discipline and train "could only manifest itself through the Defendant Officers' actions"). Plaintiff's *Monell* claim is not viable unless the jury first finds that Defendant Officers violated Plaintiff's constitutional rights. Thus, even if the City maintained the *de facto* policies or practices Plaintiff alleges, an officer would still have to act for the harm to occur. *See Williams*, 315 F. Supp. 3d at 1081 (explaining that even if the City had such a policy or practice, "the harm caused by the practice could only manifest itself through the officers' actions").

This analysis does not change even if the Defendant Officers invoke qualified immunity as an affirmative defense to raise the prospect of an inconsistent verdict, because the relevant question "is whether the [Defendant Officers] committed the constitutional violation(s) . . . not whether they can be held liable for them." *Ezell*, 2019 WL 3776616, at *4; *see also Tate*, 2021 WL 4400982, at *1 (bifurcating *Monell* claims where "even if the individual officers can avoid liability through qualified immunity or by showing that a policy, custom, or practice required them to take the actions they did, their actions still must be constitutionally excessive for the City to face liability").

The success of a qualified immunity defense would not bar Plaintiff's recovery of compensatory damages, nor would it prevent them from attempting to pursue their *Monell* claim.

Furthermore, even if Defendant Officers are found liable, the City will consent to entry of judgment against it for the amount of damages caused by the violations, plus reasonable attorneys' fees, without requiring Plaintiff to prove Section 1983 municipal liability. (*See* Ex. A ¶ 4.) The Consent allows Plaintiff to obtain a judgment against the City for full compensation for their damages, as long as they prove their constitutional rights were violated, thereby avoiding litigation of the *Monell* claim. This would be true even if any of the Defendant Officers successfully assert a qualified immunity defense. (*Id.* ¶ 5.) Accordingly, even if the qualified immunity defense is successfully raised, bifurcation and a stay of discovery and trial is still appropriate.

### B.     Bifurcation and staying discovery of the *Monell* claim will minimize the complexity and burden of litigation.

*Monell* discovery requires "an extensive amount of work" and an "extraordinary amount of money." *Moore v. City of Chicago*, No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007). But bifurcation and staying discovery of the *Monell* claim can streamline litigation and lessen the burden of discovery especially when, as here, the *Monell* claim is dependent upon resolving the claims against the Defendant Officers. *Treadwell*, 2022 WL 267988, at *6; *Adams v. City of Chicago*, No. 06-CV-4856, 2012 WL 13060050, at *2-4 (N.D. Ill. Nov. 2, 2012) (granting bifurcation and stay on *Monell* claim, recognizing that "[s]hould no constitutional violations be found in the remaining claims, proceeding on the *Monell* claim would be unnecessary and the extra time and money spent for litigation of that claim would have been for naught").

Plaintiff's *Monell* allegations are significantly broader in scope than their claims against Defendant Officers. Plaintiff's allegations against the Defendant Officers arise from a single protest in June 2020 and focus on Defendant Officers' alleged false arrest of Plaintiff. (ECF No.

9

26 ¶¶ 47-52.) Plaintiff also alleges that unidentified officers shoved him to the ground and trampled him and other protestors. (*Id.*)

Yet Plaintiff alleges that there are thirteen unlawful policies, practices, or customs at issue giving rise to *Monell* liability, some of which appear wholly unrelated to the alleged incidences with Defendant Officers. For example, Plaintiff does not allege that any officers used OC spray at the June 1, 2020 protest, yet alleges that one of the thirteen *de facto* policies is "[u]sing chemical agents like pepper spray and/or tear gas without prior warning." (*Id.* ¶ 136(h).) Plaintiff alleges additional policies, practices, or customs unrelated to the alleged harms they claim to have suffered, including: "[r]etaliating against protesters who record the police and/or speak out against police violence," "[b]reaking, stealing, or otherwise disposing of protesters' belongings," and "maintaining, condoning, and failing to take steps to end the code of silence in the CPD that allows Chicago police officers to violate protesters and other civilians' rights with impunity." (*Id.*)

Moreover, the alleged policies, practices, and customs are substantively broad, and identical to what has been alleged in other severed cases. *See, e.g.*, *Angers v. Chavez*, No. 23-cv-2242, ECF No. 25 ¶ 214. Plaintiffs in those actions have used these broad allegations to justify similarly broad discovery. For example, in *Angers*, plaintiffs' first set of document requests to the City, attached as <u>Exhibit C</u>, seek, in relevant part, the following:

- "Any and all communications relating to CPD's response to protests between the date of May 29, 2020 and August 15, 2020" (Ex. C ¶ 3);

- "Any and all documentation identifying the type of chemical weapons authorized for use by the Chicago Police Department between the dates of May 29, 2020 and August 15, 2020, including but not limited to, Oleoresin Capsicum (OC) spray" (*Id.* ¶ 11);

- "Any or all reports, memorandum, or other documents created by the City of Chicago and the Chicago Police Department reviewing, analyzing, or evaluating the Chicago Police Department's response to the protests in the City of Chicago during the period of time from May 29, 2020 through August 15, 2020" (*Id.* ¶ 13); and

- "Any and all communications, including text messages and emails, sent or received by any CPD Command Personnel regarding any protest or demonstration between the dates of May 25, 2020 and August 30, 2020" (*Id.* ¶ 15).

Plaintiff will no doubt seek similarly broad discovery in this matter and continue to seek extensive discovery—discovery that, as discussed above, may be unnecessary once Plaintiff's claims against Defendant Officers are adjudicated or otherwise resolved, especially given the City's offered Consent.

Additionally, plaintiffs' first set of discovery requests to Superintendent Brown in *Angers*, attached as Exhibit D, seek documents related to: (a) "[a]ny and all communications, including text messages and emails, sent or received by you regarding any protest or demonstration between the dates of May 25, 2020 and August 30, 2020" (Ex. D ¶ 5); and (b) "[a]ny and all documents which you have ever drafted regarding any protest or demonstration between the dates of May 25, 2020 and August 30, 2020, including but not limited to memoranda, journal entries, reports, etc." (*Id.* ¶ 8.) Plaintiff is likely to propound similar discovery in this case. Considering that *Monell* discovery may be unnecessary to resolve Plaintiff's claims, there is no reason to burden Defendants with such exhaustive discovery. *See Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008) (concluding that "litigation of the *Monell* claim is likely to require a considerable investment of resources on the part of the parties and the Court outside of those required for the resolution of the claims against Defendant Officers," therefore finding it "prudent to resolve the claims against Defendant Officers before engaging in costly and time-consuming litigation of the *Monell* claim").

Granting Defendants' motion may eliminate the need for: (1) judicial intervention in discovery disputes arising from these claims; (2) Rule 30(b)(6) witnesses or purported "policymakers" on the several policies and procedures implicated by Plaintiff's wide-ranging *Monell* allegations; (3) costly expert discovery on policing policies; and (4) presiding over a trial

that will be longer and more factually and legally complex than a trial that would focus solely on the individual defendant's liability. *See James v. City of Chicago*, No. 21-CV-6750, 2022 WL 2952779, at *1-2 (N.D. Ill. July 26, 2022) (denying plaintiffs' motion to reconsider trial court's previous ruling bifurcating *Monell* claims and identifying these same considerations as reasons justifying bifurcation); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000) ("The trial of the claims against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims."). Bifurcation and a stay of *Monell* discovery is a reasonable way to avoid costly discovery that may be unnecessary. Indeed, the Seventh Circuit has explicitly endorsed bifurcation to avoid "the waste of the valuable time and resources of the court." *Treece*, 213 F.3d at 365. To streamline the case and conserve the resources of the Court and the parties, the Court should bifurcate and stay discovery and trial on the *Monell* claim.

## II. Bifurcation will prevent unfair prejudice to Defendants and will not prejudice Plaintiff.

When weighing the equities under Rule 42, courts view prejudice as the most important consideration. *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-CV-9312, 2016 WL 6833912, at *5 (N.D. Ill. Nov. 21, 2016); *Blassingame*, 2023 WL 2390363, at *4; *see also Ackerman v. Allen*, No. 16-CV-06199, 2017 WL 1536447, at *7 (N.D. Ill. Apr. 27, 2017) (bifurcating *Monell* claims to avoid unfair prejudice, noting that even if the risk of prejudice is slight, preventing it supports bifurcation).

### A. Bifurcation is necessary to prevent unfair prejudice to Defendant Officers.

Introducing evidence relating to Plaintiff's *Monell* claim, which will involve other instances of alleged police misconduct unrelated to Plaintiff's claims against the Defendant Officers, creates a substantial risk of unfair prejudice for the Defendant Officers and undermines their ability to receive a fair trial. *Veal v. Kachiroubas*, No. 12-CV-8342, 2014 WL 321708, at *6

(N.D. Ill. Jan. 29, 2014). "This strongly favors bifurcation of the *Monell* claims." *Carr*, 908 F. Supp. 2d at 935. There is a "real danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." *Ojeda-Beltran*, 2008 WL 2782815, at *3. Courts in this District have held that bifurcation of *Monell* claims from those asserted against individual defendant officers is appropriate to avoid the potential unfair prejudice caused by the introduction of extensive and extraneous evidence about alleged misconduct in which they were not involved. *See Savory*, 2022 WL 767169, at *5 ("The officer defendants face a risk of unfair prejudice from the prospect that the jury would attribute to them the various acts of alleged police misconduct committed by numerous non-party officers [admitted] to establish a policy or practice."); *Harris*, 2016 WL 3261522, at *3 ("Even with the mitigating factor of limiting instructions and other methods, the individual defendants could face unusual difficulty in distinguishing their own acts that allegedly violated Plaintiff's constitutional rights from evidence that would be introduced to support claims against the [City]." (internal quotation marks and citation omitted)).

The Defendant Officers' liability rests on "their own [alleged] misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Repeatedly addressing alleged misconduct of non-defendants in front of the jury invites jurors to find the Defendant Officers guilty by association, rather than deciding liability based on their own actions. *See Sopron v. Cassidy*, No. 19-CV-08254, 2023 WL 6213713, at *4 (N.D. Ill. Sept. 22, 2023) (granting bifurcation and stay of *Monell* on basis of unfair prejudice because "[i]t is possible, perhaps probable, that a jury would, by association, impermissibly tag the Individual City Defendants and the City with unjustified accountability after having been presented with evidence to that effect").

### B. Bifurcation is necessary to prevent unfair prejudice to the City.

A risk of prejudice also exists against the City if a single trial is held for all of Plaintiff's claims. "Bifurcation may be proper solely because a joint trial would be prejudicial to the moving party." *Bradford*, 2019 WL 5208852, at *3. *Monell* and its progeny provide a way to hold municipalities and municipal policymakers liable for their own conduct; it is not a means to hold a municipality liable through a form of vicarious liability like *respondeat superior*. *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct, units of local government are responsible only for their policies rather than misconduct by their workers."). The allegations against Defendant Officers, if proven, may cause a jury to hold the City liable on the *Monell* claim, without giving that claim due deliberation, particularly if the jurors find the actions of any Defendant Officer egregious. Trying the claims against Defendant Officers together with the *Monell* claim therefore creates a substantial risk that the *Monell* claim would devolve into a *respondeat superior* claim, despite law to the contrary. *Milestone*, 665 F.3d at 780; *Bradford*, 2019 WL 5208852, at *4 (granting bifurcation due in part to the risk of unfair prejudice that "*Monell* would devolve into a *respondeat superior* claim" if the *Monell* claim was included in a combined trial with the claims against the individual officers). Finally, simultaneous with this filing, the City moves to dismiss the *Monell* claim, which may further refine the scope of any discovery to be taken with respect to the City. To proceed ahead with discovery before resolution of the motion to dismiss would prejudice the City.

### C. Bifurcation will not unfairly prejudice Plaintiff.

Plaintiff will suffer no unfair prejudice if the Court grants a bifurcation and stay. Plaintiff has not yet propounded discovery and so would not suffer prejudice if the *Monell* claim was stayed and bifurcated at this early stage. *Cf. Giles v. Ludwig*, No. 12-CV-6746, 2013 WL 6512683, at *4

(N.D. Ill. Dec. 6, 2013) (rejecting bifurcation and stay of discovery where much of *Monell* discovery was already completed). Moreover, if Plaintiff proves any of their claims against the Defendant Officers, bifurcation will not preclude Plaintiff from prosecuting their *Monell* claim, nor would bifurcation deprive Plaintiff of evidence necessary to prove their claims against the Defendant Officers. *See Treadwell*, 2022 WL 267988, at *7 ("[The] *Monell* claims thus could be bifurcated without prejudicing [Plaintiffs'] case, since those claims will not assist the jury in determining predicate causes of action against Defendant Officers."); *Carthans*, 2017 WL 11595111, at *1 ("[B]ifurcation will not prejudice the Plaintiff since bifurcation will not preclude her from bringing the *Monell* claim."). And, in any case, such *Monell*-related discovery may be unnecessary, considering the City has offered a Consent that would provide Plaintiff the compensatory damages they seek, assuming they succeed in their claims against any of the Defendant Officers. To the extent that Plaintiff argues obtaining a *Monell* judgment against the City has intrinsic value because, for example, it would motivate the City to implement reform, such an argument ignores that the City is already legally obligated to implement policies as required by the Consent Decree, and the City's compliance with those requirements is monitored by this Court. *Ezell,* 2019 WL 3776616, at *7 (finding that plaintiffs provided insufficient reasoning as to how the City's proposed limited consent "would not serve as an adequate deterrent" and noting how plaintiffs admit that "the City will soon adopt a number of police reforms pursuant to a Consent Decree . . . *i.e.* reform achieved without Monell liability").

## CONCLUSION

Rule 42(b) favors the bifurcation and a stay of discovery and trial of the *Monell* claim where doing so will avoid prejudice and facilitate convenience, expedience, and economy—and those objectives will be well-served here. For all these reasons, Defendants request that the Court grant their combined motion to bifurcate and stay discovery and trial of Plaintiff's *Monell* claim.

Dated: February 29, 2024

Respectfully submitted,

By: /s/ *Graham P. Miller*
Special Assistant Corporation Counsel

Timothy P. Scahill  tscahill@borkanscahill.com
Steven B. Borkan  sborkan@borkanscahill.com
Whitney N. Hutchinson  whutchinson@borkanscahill.com
Hilary Jabs  hjabs@borkanscahill.com
Graham P. Miller  gmiller@borkanscahill.com
BORKAN & SCAHILL, LTD
20 South Clark Street, Suite 1700
Chicago, IL 60603
(312) 580-1030

***Counsel for Defendant Officers***

By: /s/ *Elizabeth E. Babbitt*
Special Assistant Corporation Counsel

Allan T. Slagel  aslagel@taftlaw.com
Elizabeth E. Babbitt  ebabbitt@taftlaw.com
T. Hudson Cross, IV  hcross@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 527-4000

Anton Christopher Brown  cbrown@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 977-8400

***Counsel for Defendants City of Chicago and Superintendent David Brown***

131469501v5

16